FILED
2000 MAR -1 PM 1:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| PETER H. BURKE, et al., on behalf of themselves and all others similarly situated, ) ) ) | |
| Plaintiffs, ) ) ) | CV 99-BU-3097-S |
| vs. ) ) ) | |
| HAROLD RUTTENBERG, et al., ) ) ) | **ENTERED** |
| Defendants; ) ) | MAR 0 1 2000 |
| GEORGE W. MASSEY, on behalf of himself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) ) | CV 99-BU-3129-S |
| vs. ) ) ) | |
| HAROLD RUTTENBERG, et al., ) ) ) | |
| Defendants; ) ) | |
| DONALD L. LANE, on behalf of himself and all others similarly situated, ) ) ) ) | |
| Plaintiff, ) ) ) | CV 99-BU-3307-S |
| vs. ) ) ) | |
| HAROLD RUTTENBERG, et al., ) ) ) | |
| Defendants. ) ) | |

68

## Memorandum Opinion

On November 8, 1999, Plaintiff Donald L. Lane ("Lane") filed an action on behalf of himself and a class of similarly situated individuals in the Circuit Court of Shelby County, Alabama. In his complaint, Lane alleges that Defendants Harold Ruttenberg, Eric L. Tyra, Michael P. Lazarus, Don-Allen Ruttenberg, Randall L. Haines, David F. Bellet, Bart Starr Sr., Edward S. Croft III, Adam J. Gilburne, Scott C. Wynne, Alex M. Bond, Deoitte Touche LLP and one hundred John Does "devised, conspired and pursued a scheme to consistently misrepresent material information on the financial reports of [Just for Feet, Inc.]." *Lane* Complaint at 5, ¶ 11. To accomplish this goal, Lane avers, the Defendants "executed a series of unlawful and improper transactions and then misrepresented these transactions and the [company's] true financial status." *Id.*, ¶ 12. Among the actions allegedly taken by the Defendants were the overstating of income, the manipulation of "earning trends through [mischaracterization of] unusual transactions as sales," the amortization of uncollectible receivables, the refusal to require "supporting documentation of significant accounting declarations for reports and projections," the falsification of costs and the declination to perform due diligence. *Id.* IN addition, Lane makes the following allegations:

> Additionally, and most recently, the defendants began to make misrepresentations about the Company's position in order to execute a scheme to benefit the bondholders to the detriment of the shareholders. On July 31, 1999, the company had over $21 million dollars in cash. On September 24, 1999[,] the Company announced a new credit facility providing them with an additional $34 million dollars in cash giving it $55 million dollars in cash during the third quarter. Then the Company issued

>a press release stating "The Company believes that the funds available to it under these new facilities, along with cash in hand and internally generated funds, will provide adequate liquidity through the end of the current fiscal year." On November 1, 1999[,] the Company suddenly announced that it missed a bond payment and simultaneously entered into a debt to equity restructuring which will result in a more favorable result for the bondholders and a detrimental result for the common stockholders.

*Lane* Complaint at 6, ¶ 14. Lane infers from this that the Defendants engaged in one of two deceptive practices: either Just for Feet, Inc., falsely stated that it had adequate liquidity or the decision to miss the bond payment was part of a scheme to benefit the Defendants and bondholders at the expense of the shareholders. Either of these practices, Lane argues, give rise to claims of conspiracy, breach (and abetting breach) of fiduciary duty, fraud, negligent misrepresentation, suppression of truth, and deceit under Alabama law against all of the Defendants.

The Defendants removed the action to federal court on December 14, 1999, within thirty days of each Defendant's receipt of the *Lane* complaint, averring that section 28(f)(2)of the Securities Exchange Act of 1934, *as amended by* section 101(b)(1) of the Uniform Securities Litigation Standards Act of 1998, 15 U.S.C. § 78bb(f)(2), permitted removal of the class action. On February 2, 2000, this Court indicated that it was uncertain of its jurisdiction over said proceeding and stated that the parties were to provide the Court with position statements related to the issue of jurisdiction on or before February 14, 2000.[1] These materials having been received, the issue is now appropriate for resolution.

"[A]n argument that the court lacks jurisdiction may be raised at any time during the course of the proceedings." *Blab T.V. of Mobile, Inc. v. Comcast Cable*

---

[1] The Court must confess to some inaccuracy on its part in questioning its jurisdiction. The initial order of this Court dealt with the absence of diversity jurisdiction, what it mistakenly thought to be the primary problem, and did not recognize the genuine issue related to the removal provision of section 28(f) of the Securities Exchange Act, 15 U.S.C. § 78bb(f).

*Communications, Inc.*, 182 F.3d 851, 853 (11th Cir. 1999). Indeed, it is mandatory that a district court remand an action to state court at any time a want of removal jurisdiction becomes apparent. *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999). A district court, in evaluating its removal jurisdiction, is required to attend to a federal policy against the easy exercise of such jurisdiction over an action. *See Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996). Removal statutes are generally to be narrowly construed, "with doubt construed against removal." *Id*, citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107-09 (1941). "A presumption in favor of remand is necessary because if a federal court reaches the merits of a pending motion in a removed case where subject matter jurisdiction may be lacking it deprives a state court of its right under the Constitution to resolve controversies in its own courts." *University of South Alabama v. American Tobacco Co.*, 168 F.3d at 411.

On a motion to remand, the removing party bears the burden of establishing jurisdiction. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998); *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996). Thus, it is incumbent upon the Defendants to this action to demonstrate that section 28(f)(2) of the Securities Exchange Act of 1934, *as amended by* section 101(b)(1) of the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f)(2), allows removal of this class action to federal court. This statutory provision states, in relevant part:

> (f) Limitations on remedies
> > (1) Class action limitations
> > > No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging —
> > > > (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
> > > > (B) that the defendant used or employed any manipulative or deceptive device or contrivance in

>connection with the purchase or sale of a covered security.
>
>(2) Removal of covered class actions
>
>Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1), shall be removable to the Federal district court for the district in which the action is pending, and shall be subject to paragraph (1).

15 U.S.C. §§ 78bb(f)(1) & (2). Defendants devote the sum of their briefs to the assertion that the class action sought to be maintained by Lane is a "covered class action" described in section 28(f)(1) and is therefore removable to federal court. The Court agrees with the position of the Defendants that the *Lane* action involves a covered class action described by section 28(f)(1) and is therefore subject to the removal provision set forth in section 28(f)(2). Lane's contentions to the contrary are meritless. However, the easy resolution of the *Lane* action's coverage under section 28(f)(2) belies the much harder question of whether the removal provision is antithetical to the case or controversy requirement of Article III of the Constitution.

Removal of an action to federal court normally occurs under 28 U.S.C. § 1441, which permits removal only if "the case originally could have been filed in federal court." *City of Chicago v. International College of Surgeons*, 522 U.S. 156, —, 118 S.Ct. 523, 529 (1997). As a general matter, removal grounded on the presence of a federal question is available only if the prerequisites of statutory federal question jurisdiction over a claim are present. Section 1331 of Title 28 permits the exercise of federal question jurisdiction only where there exists a federal claim present on the face of the "well-pleaded complaint." *See Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149, 152 (1908). *See also Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) ("The 'well-pleaded complaint rule' is the basic principle marking the boundaries of the federal question jurisdiction of the federal district courts."). For most cases, the existence of an anticipated defense is not grounds for removal of an action; rather, the federal issue must be "an element, and an essential one, of the plaintiff's cause of action." *Gully v. First National*

*Bank*, 299 U.S. 109, 111 [] (1936). This is true even with respect to the two so-called exceptions to the well-pleaded complaint rule, the complete preemption exception and the substantial and necessary federal element exception. An attempt to assert federal question jurisdiction over an action based upon either of these exceptions requires the existence of a federal element in the claim of the plaintiff over which jurisdiction may be asserted. *Rivet v. Louisiana*, 522 U.S. 470, —, 118 S.Ct. 921, 926 (1998). *See also Pacheco De Perez v. AT&T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). However, this requirement, while necessary under the federal question statute, 28 U.S.C. § 1331, is not necessarily a constitutionally mandated one.

Section 28(f)(2) is an unusual statutory provision, permitting the exercise of federal question jurisdiction based upon the presence of a federal defense.[2] That section, as written, permits removal of certain state law class actions described under section 28(f)(1) which are proscribed by the statute and then mandates that the action "be subject to paragraph [28(f)(1)]" — that is, summarily dismissed. 15 U.S.C. § 77bb(f)(2). In effect, the section calls for the removal of only those state-law class actions that the section renders

---

[2] In allowing removal based upon a federal defense, section 28(f)(2) is an attempt to take up some of the slack between the extent of federal jurisdiction under Article III of the Constitution and the federal question statute, 28 U.S.C. § 1331. Article III of the Constitution extends the judicial power "to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and the Treaties made, or which shall be made, under their Authority." U.S. CONSTITUTION, ART. III, Section 2. And while the language employed in that article is nearly identical to that used in the general federal question statute, 28 U.S.C. § 1331, which reads, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," the meaning of the phrase "arising under" in the constitutional context has often been noted to be somewhat broader, encompassing both federal claims and federal defenses. *See*, for example, *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, (1957) ("While interpretive decisions are legion under general statutory grants of jurisdiction strikingly similar to [the] constitutional wording, it is generally recognized that the full constitutional power has not been exhausted by these statutes. See, e.g., Mishkin, The Federal 'Question' in the District Courts, 53 Col.L.Rev. 157, 160; Shulman and Jaegerman, Some Jurisdictional Limitations on Federal Procedure, 45 Yale L.J. 393, 405, n. 47; Wechsler, Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemp. Prob., 216, 224--225.") (J. Frankfurter, dissenting).

incapable of being maintained or, as the Defendants put it, "preempts." This raises the curious question of whether a federal court can assert jurisdiction over a claim where the federal law under which jurisdiction is posited also eradicates any claim over which jurisdiction may be had.[3]

The answer to this question is in the negative. The legal facts that support removal also put to bed any claims over which jurisdiction may be had. As those claims over which federal jurisdiction is posited are extinguished by the facts supporting removal, there is no case or controversy arising under the laws of the United States. A similar rationale has, in part, guided federal courts in refusing to permit removals under the federal question statute, 28 U.S.C. § 1331, premised on mere federal preclusion or preemption, i.e., there exists no active federal case or controversy over which the federal court can extend its jurisdiction. See Rivet v. Regions Bank of Louisiana, 522 U.S. 470, —, 118 S.Ct. at 926 ("A case blocked by the claim preclusive effect of a prior federal judgment differs from the standard case governed by a completely preemptive federal statute in this critical respect: The prior federal judgment does not transform the plaintiff's state-law claims into federal claims but rather extinguishes them altogether."). The same reasoning provides some support for those cases in which subject matter jurisdiction is found to be absent because the claims presented are frivolous or immaterial. See Bell v. Hood, 327 U.S. 678, 682-83 (1946); Blue Cross & Blue Shield of Alabama v. Sanders, 138 F.3d 1347, 1352 (11th Cir. 1998).

Further, any argument raised from the historical practice permitting federal question jurisdiction due to the presence of an anticipated or extant federal defense under the Act of March 3, 1875, does not defeat this argument. During the period in which this Act was effect, until passage of the Judiciary Act of 1887, removal from state court to

---

[3] The Court recognizes this to be a somewhat novel issue in the present context, but such cannot be helped, given that the removal scheme amended to the Securities Exchange Act of 1934 by the Securities Litigation Uniform Standards Act has not been evaluated in any prior cases.

federal court on the basis of a federal defense was permitted. *See*, for example, *Railroad Company v. Mississippi*, 102 U.S. (12 Otto) 135, 141 (1880) (stating that federal question arising in answer sufficent to permit removal jurisdiction), and *Gold-Washing and Water Company v. Keyes*, 99 U.S. (6 Otto) 199, 201-03 (1877) (disallowing removal where federal question too tenuously related to action). However, there exists a difference between a mere federal defense and preemption or preclusion, as noted in the cases cited above.

For example, contrast a statute permitting removal based upon an arguable immunity defense with a statute permitting removal of an action only where the defendant is immune from suit. In the former instance, after removal there remains a judicable case or controversy; the question of the federal defense remains to be decided. In the later case, there is nothing to decide upon removal, as the claims over which jurisdiction is attempted are simultaneously dismissed. The cases removed on the basis of a federal defense under the scheme established by the 1875 Act were of the former sort, not the later. While cases support the conclusion that a claim can "arise under" the constitution or federal law for purposes of the constitution where a defense potentially renders a plaintiff's claims deficient, there exists no federal jurisdiction over the action where the basis for such jurisdiction is also an automatic preclusion of any claims to be adjudicated. The cases in which removal was permitted averred only an arguable federal defense to be litigated, rather than a defense that, coterminous with removal, would require the plaintiff's claims themselves to be extinguished.

In addition, the removal difficulties presented in this case are akin to those presented by that class of cases in which federal jurisdiction is absent due to a lack of derivative jurisdiction. The principle of derivative jurisdiction was one that limited the removal jurisdiction of the district courts premised on federal question jurisdiction until Congress enacted 28 U.S.C. § 1441(e) in 1986. Under the doctrine of derivative jurisdiction, a federal court could not have removal jurisdiction over an action originally brought in state court unless the state court from which the action was removed had

jurisdiction over the action. *See Cummings v. United States*, 648 F.2d 289, 291 (5th Cir. Unit A 1981). As the Supreme Court, in the case giving rise to the principle of derivative jurisdiction, *Lambert Run Coal Co. v. Baltimore & Ohio Railroad Co.*, 258 U.S. 377, 382 (1922), stated:

> The jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.

*See also* WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE 2D at § 3721 ("Under this so-called "derivative jurisdiction" principle, if the state court had no jurisdiction, the federal court acquired none by removal because there was no validly pending state action to remove. The effect of the rule's application was a dismissal of the action by the federal court."). The appropriate action of a federal court confronted with an absence of derivative jurisdiction was dismissal, as the federal court could not return the action to a state court lacking jurisdiction. *See Cummings*, 648 F.2d at 291.[4] Similarly, because in the instant action the facts supporting removal also extinguish any state action that could be removed, there exists no action of which to take cognizance.

The problem posed by this line of reasoning is avoided only if the statute, which automatically preempts the state-law claims, also provides a federal law substitute for those claims — that is, where the claims are "completely preempted." *See Rivet*, 522 U.S. 470, —, 118 S.Ct. at 926; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). "According to the Supreme Court, complete preemption occurs when 'the pre-emptive force of a

---

[4] Congress sought to remedy the problem created by the principle of derivative jurisdiction in enacting section 3 of the Judicial Improvements Act of 1985, Pub. L. 99-336, which states that a district court to which a civil action is removed "is not precluded from hearing and determining any claim in such civil action because the State court from which such civil action is removed did not have jurisdiction over that action." 28 U.S.C. § 1441(e). In other words, for those actions over which there is an absence of subject matter jurisdiction in the state court, but over which there would be original jurisdiction in the federal court, the district court is to act as if the action were filed initially in federal court.

statute is so 'extraordinary' that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Blab T.V. of Mobile, Inc. v. Comcast Cable Communications, Inc.*, 182 F.3d at 854 (citing *Caterpillar Inc. v. Williams*, 482 U.S. at 393).[5] The Eleventh Circuit Court of Appeals, in *Blab T.V.*, eschewed the adoption of a rigid complete preemption analysis, instead concluding it wiser to provide some general rules of thumb. *Id.* at 858-59. First, the *Blab T.V.* court noted "that, although the Supreme Court recognizes the existence of the complete preemption doctrine, the Court does so hesitatingly and displays no enthusiasm to extend the doctrine into areas of law beyond the LMRA and ERISA." *Id.* at 856. As such, a district court should be reluctant to extend the complete preemption doctrine except in cases where the law clearly requires it. The Eleventh Circuit Court of Appeals then examined the approaches taken by other circuit courts on the issue and concluded that the cornerstone of any analysis should be the evaluation of Congressional intent not only to create a federal defense to a state law claim in either federal or state court but a clear intent to permit removal of that claim by supplanting it with a federal claim. *Id.* In resolving this, a federal court is to examine "whether the state claim is displaced by federal law under an ordinary preemption analysis, whether the federal statute provides a cause of action, what kind of jurisdictional language exists in the federal statute, and what kind of language is present in the legislative history to evince Congress's intentions," as well as "looking . . . at the expressions of congressional intent found [in the relevant section], the [relevant statute] in general, and the [statute's] legislative history."

Looking first at the language of section 28(f) of the Securities Exchange Act, a few things are apparent. First, section 28(f)(1) is clearly directed at preventing a certain

---

[5] *Blab T.V.* provides an insightful description of the history of the "complete preemption" exception, examining its origins in Supreme Court interpretation of section 301 of the Labor Management Relations Act and its later application to cases under section 502(a) of the Employee Retirement Income Security Act. See *Blab T.V.*, 182 F.3d 854-56.

subclass of actions from being brought under state law, i.e., covered class actions involving misrepresentations or deceptive practices in the sale of covered securities. 15 U.S.C. § 78bb(f)(1). The statute does not bar non-class claims and is not a complete bar to class actions where the state law to be applied is that of the state in which the issuer of a security is incorporated or organized. 15 U.S.C. § 78bb(f)(3). Rather than barring certain *claims* under state law, therefore, section 28(f) is directed at preventing plaintiffs from bringing those state-law claims utilizing a select group of state-law procedural mechanisms. The statute acts as a bar to the use of the class action procedural device to bring state law claims involving misrepresentation or deceptive practices in the in the sale of securities. The section is not an attempt to supplant those state-law claims altogether. Further, there is no language in section 28(f) which would direct the court to convert those class claims under state law to federal class claims. The inference from this is that Congress did not intend to smooth the landscape of state law tort claims involving securities fraud underneath a federal brush, but instead desired such claims generally to be brought by the state, individual investors, small groups of investors, or not at all.

The tenor of the Uniform Securities Litigation Standards Act, which amended the Securities Exchange Act to include section 28(f), is in the same chord. In its findings, Congress stated:

> The Congress finds that —
> (1) the Private Securities Litigation Reform Act of 1995 sought to prevent abuses in private securities fraud lawsuits;
> (2) since enactment of that legislation, considerable evidence has been presented to Congress that a number of securities class action lawsuits have shifted from Federal to State courts;
> (3) this shift has prevented that Act from fully achieving its objectives;
> (4) State securities regulation is of continuing importance, together with Federal regulation of securities, to protect investors and promote strong financial markets; and

> (5) in order to prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of the Private Securities Litigation Reform Act of 1995, it is appropriate to enact national standards for securities class action lawsuits involving nationally traded securities, with preserving the appropriate enforcement powers of State securities regulators and not changing the current treatment of individual lawsuits.

Section 2 of the Uniform Securities Litigation Standards Act, Pub. L. 105-353 (1998). The findings do not evince an attempt to supplant state law, but to require that securities fraud class actions not be permitted under state law in a state court. There is no indication that the state law claims are to be "subsumed" by federal law, as, for example, section 502(a) of the Employee Retirement Income Security Act requires.

Finally, there is the commentary of Congress in the amendment of section 28 of the Securities Exchange Act of 1934. In its section-by-section analysis of the legislation that was eventually enacted as the Uniform Securities Litigation Standards Act, House Report No. 105-640 from the Commerce Committee states that 28(f)(2) "provides that any class action described in subsection [(1)] that is brought in a State court shall be removable to a Federal district court, *and may be dismissed.* . . ." (Emphasis added.) The analysis provides no alternative action that may be taken by the federal court, nor is there language requiring that a federal claim be substituted for the preempted state law claims. Rather, upon removal, the action is terminated. Therefore, under the analysis set forth in *Blab T.V.*, complete preemption was not clearly, or even likely, intended by Congress in amending section 28 of the Securities Exchange Act of 1934.

In the end, however, there is no need for this Court to decide whether, in the instant case, the scope of section 28(f)(2) removal oversteps the limits of Article III. It does not matter whether section 28(f)(2) is a viable removal vehicle or not; if it is, then immediately consequent to removal, a dismissal, without prejudice, is in order. If section

28(f)(2) is not a viable removal vehicle, the appropriate action in this case, as in the "derivative jurisdiction" cases, is to dismiss Lane's action, without prejudice, as there remains no state action to return to state court. Either way, then, the *Lane* action is due to be DISMISSED, without prejudice to Lane to file appropriate claims in an appropriate forum.

Dismissal of the *Lane* action is no bar to Lane's ability to re-file his suit, if he does not believe that he would be adequately represented by a federal class, on the possibility that one is certified. However, if he does choose to re-file an action in either state or federal court, that action cannot be a purported class action premised on state law. An order will be entered contemporaneously with this memorandum opinion to the same effect.

DONE and ORDERED this /1st day of March, 2000.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE