IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STATE OF WISCONSIN INVESTMENT BOARD, KENNETH D. BUSH, EDWARD E. EUBANK, and JOHN MICHAEL, suing on behalf of themselves and all others similarly situated, )<br><br>Plaintiffs, )<br><br>vs. )<br><br>HAROLD RUTTENBERG, et al., )<br><br>Defendants. ) | CIVIL ACTION NOS.<br>CV-99-BU-3097-S<br>and<br>CV-99-BU-3129-S<br><br>**ENTERED**<br>JUL 0 3 2001 |

## MEMORANDUM OF OPINION

This cause comes to be heard on a motion for class certification filed by the Lead Plaintiff Committee ("Committee") on February 1, 2001. This Committee, consisting of the State of Wisconsin Investment Board, Kenneth D. Bush, Edward E. Eubank, Jr., and John Michael, contends that class treatment under Federal Rule of Civil Procedure 23(b)(3) is appropriate for the putative class members' claims for various violations

of securities laws by Harold Ruttenberg, Eric L. Tyra, Peter Berman, Cooper Evans, Patrick Lloyd, Don-Allen Ruttenberg, Michael P. Lazarus, Helen Rockey, Scott C. Wynne, Randall Haines, and Adam Gilburne, as high-level officers and insiders of Just for Feet, Inc. ("Feet Defendants"); and by Deloitte & Touche LLP, Steven H. Barry, and Karen Baker, as independent auditors and audit managers ("audit Defendants").  Only one argument against certification of the class as a whole has been presented to the Court by any of the Defendants.  This argument is that internal conflicts among the claims of the putative class members make a class action an inadequate means of resolving the claims of the putative class members.  The Defendants concentrate instead on issues of class definition, disputing which claims would come within the compass of the class action; what the appropriate class period is; and whether a single class or multiple subclasses should be certified against the Defendants.

Class certification is appropriate if and only if *all* of the requirements of Federal Rule of Civil Procedure 23(a) are satisfied and "at least one of the alternative requirements of Rule 23(b) are satisfied. . . ," so long as that alternative requirement is appropriate to the relief sought in the action.  *Turner v. Beneficial Corp.*, 242 F.3d 1023, 1025 (11th Cir. 2001).

To begin with, plaintiffs desiring class certification "must satisfy the prerequisites of numerosity, commonality, typicality, and adequacy of representation specified in Rule 23(a)." *Murray v. Auslander*, 244 F.3d 807, 810 (11th Cir. 2001). The class must be so numerous that any attempt to bring such claims of its members in a single action pursuant to standard joinder rules would be impracticable. *See Kilgo v. Bowman Transport, Inc.*, 789 F.2d 859, 878 (11th Cir. 1986); *Pederson v. Louisiana State University*, 213 F.3d 858, 868 (5th Cir. 2000); and *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 132 (1st Cir. 1985). Next, issues of law or fact common to all members of the putative class must exist. This requirement is a minimal one, requiring a mere identity of some factual or legal matter among members of the putative class. *See Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir. 1996); *James v. City of Dallas, Texas*, — F.3d —, 2001 WL 682089 at *12 (5th Cir. June 18, 2001); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998); and *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Third, the claims and defenses of the class representatives must be typical of those of the class members. This requirement tends to merge with those of commonality and adequacy: both representative plaintiffs

and putative class members must be able to bring their claims to court on board the same truck. *See Hudson*, 90 F.3d at 456; *In re Milk Products Antitrust Litigation*, 195 F.3d 430, 436-37 (8th Cir. 1999); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2<sup>d</sup> Cir. 1997) ("Typicality Search Term End . . . requires that the claims of the class representatives be typical of those of the class, and 'is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"); and *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 631 (3<sup>d</sup> Cir. 1996) ("The typicality requirement is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees.").

Fourth, it must be the case that the class representatives will fairly and adequately protect the interests of the class. "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d at 1020. *See also Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.*,

222 F.3d 52, 60 (2$^d$ Cir. 2000). First, there can exist no conflicts between the class representatives and the putative class members that would impair those representatives' ability to effectively litigate their class claims. *See Andrews v. American Telephone and Telegraph Co.*, 95 F.3d 1014, 1022-23 (11th Cir, 1996); and *Georgine v. Amchem Products, Inc.*, 83 F.3d at 630-31. Second, representative plaintiffs and their counsel must be of sufficient quality, determination, and demeanor that they can celerously and skillfully litigate all relevant matters. *See Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *Rand v. Monsanto Corp.*, 926 F.2d 596, 599 (7th Cir. 1991) ("Rule 23 contemplates, and the district court should insist on, a conscientious representative plaintiff. . . ," as "[a]ll class suits create some conflict between the representative and the class; the representative and counsel may be tempted to sell out the class for benefits to themselves."); and *Dujanovic v. MortgageAmerica, Inc.*, 185 F.R.D. 660, 667-68 (N.D. Ala. 1999).[1]

---

[1] At points in this litigation, this Court has been given reason to doubt that lead counsel for the Committee has the appropriate demeanor with which to litigate this action on behalf of the class as opposed to themselves or their principal clients. These concerns need not prevent certification, however, as this Court has authority under the Private Securities Litigation Reform Act to remedy the inadequacies of counsel by substitution of lead counsel that the Court deems to be adequate for the remainder of the prosecution of this case.

Beyond showing that all requisites of Rule 23(a) are satisfied, representative plaintiffs must show that an appropriate requisite condition of Rule 23(b) is met. In the instant action, the Committee, seeking damages relief on their putative class-wide securities claims, contends that the putative class satisfies not only the requirements of Rule 23(a), but those of Rule 23(b)(3), which requires that individual issues or the claims of the individual class members not predominate over those of the class as a whole. *See Culpepper v. Irwin Mortgage Corp.*, — F.3d —, 2001 WL 672825 at * 3 (11th Cir. June 15, 2001). Rule 23(b)(3) requires "a *functional* similarity amongst the class members, that is, while each individual class member may have some different particulars to his or her claim, for purposes of resolving the core matters of the suit, any class member [is] functionally as good as another." *Culpepper v. Inland Mortgage Co.*, 189 F.R.D. 668, 672 n.1 (N.D. Ala. 1999), *aff'd sub. nom.*, *Culpepper v. Irwin Mortgage Corp.*, — F.3d —, 2001 WL 672825 at * 3 (11th Cir. June 15, 2001). As this Court stated in *Culpepper v. Inland Mortgage Co.*,

> "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v.*

> *Windsor,* 521 U.S. at 594, 117 S.Ct. at 2249. Therefore, the examination of predominance "focuses on 'the legal or factual questions that qualify each class member's case as a genuine controversy,' and is 'far more demanding' than Rule 23(a)'s commonality requirement." *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999 (11th Cir.1997) (citing *Amchem Products, Inc. v. Windsor,* 521 U.S. at 594, 117 S.Ct. at 2249-50). The locus of the predominance inquiry is whether those common issues of law and fact presented by the case are overwhelmed by the particular factual and legal inquires that the case might present. *See Andrews v. American Telephone & Telegraph Company,* 95 F.3d 1014 (11th Cir.1996). If resolution of the central inquiry of the class claim "breaks down into an unmanageable variety of individual legal and factual issues," class certification is inappropriate. *Id.*

*Id.* at 673 n.3. "The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Fed. R. Civ. Pro. 23(b)(3).

## BACKGROUND

Many of the facts related to this motion are stated in this Courts opinion of April 7, 2000. *Burke v. Ruttenberg*, 102 F. Supp. 2d 1280, 1286-89 (N.D. Ala. 2000). The Court only states the most pertinent facts here. The claims of the putative class members in this case stem from alleged attempts by the various Feet Defendants to manipulate the price of Just for Feet common stock for personal or corporate gain.[2] In May of 1997, at the opening of the proposed class period, Feet ran thirty company-owned and forty-eight franchised specialty stores in eighteen states and Puerto Rico. These stores, in contrast to others owned by different companies in the market, had been unaffected by recent flagging sales of athletic footwear, and had, in fact, shown growth during the period of lackluster sales, at least on paper. This stellar performance, as reported by Feet, allegedly persuaded numerous individuals and entities, including the members of the Committee and putative class members, to invest in Feet common stock. However, the Committee alleges, the

---

[2] Throughout the alleged class period, Just for Feet, although incorporated in Delaware, was principally an Alabama corporation, headquartered in Pelham, Alabama, and running its operations from there. Until trading was halted on November 2, 1999, shares of Feet common stock were publicly traded on the NASDAQ National Market System.

stellar performance of Feet was an illusion, maintained through the deliberate efforts of the company's officers and directors. This illusion was first maintained by inadvisable efforts to expand Feet's share of the athletic shoe market at a period when sales were low. These expansion efforts tended to require the masking of losses through the alleged use of fraudulent accounting practices, in order that expansion occur with a minimum of dissent from shareholders.

Also, the Feet Defendants, the Committee alleges, attempted to directly mislead investors in the market by filing fraudulent documents with the Securities and Exchange Commission supported by less-than-austere accounting methods. Averedly, in each Form 10-Q or 10-K filed with the SEC and in each public release touting Feet's performance contemporaneously issued, the Defendants made or participated in the making of several fraudulent misrepresentations by overstating the total sales of Feet, its gross and net income, and income per share. This continued without abatement from May of 1997, until January 21, 1999, when Feet slowly began to disseminate statements indicating the financial weakness of the company and presaging later, stronger disclosures of

financial instability in September, October, and November of 1999.[3] According to the complaints, to keep up the illusion of profitability and continued cash flow into and through 1999, the directors and officers of Feet engaged in a number of improper accounting practices.

Feet's third alleged fraudulent act was an attempt to maintain the appearance that the company would remain intact, even after buffeted by harsh financial winds in 1999 and even though up to six weeks prior to the announcement by Just for Feet that it would file a petition of bankruptcy under Chapter 11, the officers and directors of Feet knew of such an intention. According to the Committee, Feet did not disclose this intention to the public, for the purpose of arranging a secret repayment plan with certain of Feet's creditors that would be unfavorable to its shareholders. The Committee attributes this wrongdoing to a host of officers and directors of Just for Feet, averring that each either participated in the wrongdoing or permitted it to happen, with his or her knowledge and blessing, despite the presence of duty to intervene in and correct the wrongdoing.

With regard to Deloitte & Touche ("Deloitte"), the Committee avers

---

[3] According to the Committee, these later disclosures were not entirely forthcoming, either.

that it was derelict in its duty to expose the improper accounting practices of Just for Feet. In particular, it asserts that Deloitte, while issuing audit reports on the company's financial statements for the fiscal year ending January 1998 through the end of the class period, failed to insure that the underlying audit tests conformed to generally accepted auditing standards ("GAAS"). Among other things, the complaint alleges that Deloitte violated GAAS in that its senior personnel did not adequately supervise junior personnel; that it did not develop an audit plan that would screen for management irregularities; that Deloitte's auditors had an inadequate understanding of Feet's operations; that the auditors insufficiently examined collected evidence to make informed opinions about the financial statements audited by it; and that it failed to report problems to the audit committee of Feet's board of directors. Claims based on the same facts are also aimed against Steven H. Barry ("Barry"), who was, during the class period, the Birmingham office managing partner of Deloitte and the audit partner on Deloitte's audit of Just for Feet, and against Karen Baker ("Baker"), who was, during the class period, the senior manager in the audit of Just for Feet.

## CONTENTIONS & ANALYSIS

The Committee, in its motion, seeks to have certified the following defined class:

> A class of all persons and entities who purchased common stock of Just for Feet, Inc., between May 5, 1997, and November 1, 1999, excluding (1) the Defendants in this action; (2) members of the families of the Defendants in this action; (3) the subsidiaries or affiliates of any Defendants; (4) any person or entity who is a shareholder, partner, officer, director, employee, or controlling person of any Defendant; (5) any entity in which any Defendant has a controlling interest; (6) sitting magistrates, judges, justices, and their representative spouses and children; (7) counsel for Plaintiffs and their respective spouses and children; and (8) the legal representatives, heirs, successors or assigns of any such excluded person.

The Defendants have made only one challenge to certification of a class, focusing their efforts on narrowing the class definition. In arguing against class certification, the Defendants claim that the Committee is unable to satisfy the adequacy requirement of Rule 23(a) because conflicts within the class structure prevent the representative Committee from serving the interests of all class members. The Defendants next assert that if, however, class certification is appropriate, the class definition should be narrowed by the exclusion of certain claims from its

compass; by the shrinking of the class period; and by the certification of multiple subclasses against the different Defendants.

A.  ADEQUACY CHALLENGE TO CLASS CERTIFICATION.

Various defendants have presented a challenge to class certification on the grounds that the class representatives are incapable of fairly and adequately representing the interests of the class due to intra-class conflicts. This conflict, the Defendants aver, are over the nature of the securities claims between those individuals who purchased Just for Feet, Inc., securities before any disclosure of alleged misrepresentations — principally on May 21, 1999 — and those individuals who purchased those securities after the disclosure. The Defendants spell out the conflict as follows: Individuals who sold after disclosure of alleged misrepresentations will have an incentive to maximize the amount to which that disclosure corrected the price of Feet securities from their prior inflated values. This is so because their recovery for purchasing at an inflated price will be offset by the amount in excess of the "true" market value at which they sold their shares. By contrast, argue the Defendants, post-disclosure purchasers will argue that the value of their shares

remained inflated even after the disclosure because it was only a partial confession of Feet's mismanagement. These post-disclosure purchasers have an interest in arguing such because if the purchase price was not inflated after disclosure, post-disclosure purchasers are entitled to no remedy.

The Defendants thus portend to raise an allocation dilemma, as discussed in *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). Although involving a settlement class, the proposed class in *Windsor* contained an irreconcilable conflict of interests among its members, who were suing asbestos manufacturers for present and future compensation: the interests of one group of claimants for immediate disbursement of medical benefits would conflict with the interests of another group in the establishment of a long-term fund for care. *Id*. at 625-26. As has been described by the Third Circuit Court of Appeals in *Hanlon v. Chrysler Corp.*, "the clashing interests of present and future claimants presented insurmountable conflicts for class counsel who could not possibly provide adequate representation to both groups as required by Rule 23(a)(4)." *Hanlon*, 150 F.3d at 1020.

Here, however, the Defendant's allocation dilemma argument fails, for three reasons. First, the argument presented by the Defendants is, in fact, a red herring. No conflict between various pre- and post-disclosure purchasers exists, as the pre-disclosure purchasers are economically neutral on whether the disclosure deflated the price to market levels. As an example, assume that the stock was inflated by $10 per share prior to disclosure and that disclosure fully deflated the price to market levels. The pre-disclosure purchaser would then be entitled to the entire amount of the over-valuing: $10 per share. By contrast, assume that the stock price is inflated $20 per share, but the disclosure is only partial, deflating the stock value $10 per share. The purchaser then sells. He still has the benefit of $10 inflation when he sells, and thus, that $10 per share being offset from the inflation value, he is only entitled to a $10 per share recovery. Thus, it does not matter how much the deflation of the stock price at the time of sale: the recovery to the post-disclosure purchaser will be the same with or without offset.

Second, even were the Defendants correct in their argument, it still would not imply an irreconcilable conflict between pre-disclosure purchasers and post-disclosure purchasers sufficient to merit denial of

certification. This is so, because the conflicts argued by the Defendants between groups of pre-disclosure and post-disclosure purchasers would also apply to the common series of pre-disclosure purchasers, each of whom sells his or her stock at a different price after disclosure. Each of these pre-disclosure purchasers, on the Defendants' argument will have an interest in arguing that on the day of his or her sale, the stock price had declined to market values, precluding any sellers who received a greater loss after that date from claiming more damages. This Court has not found a case in which such a difficulty defeated the prospect of class certification. Finally, the Committee contains members that represent the whole range of interests capable of maximizing recovery for the class in a manner not possible were the class divided. The challenge to the adequacy of representation in the class therefore fails.

B.  CHALLENGES TO CLASS DEFINITION.

The remaining challenges of the Defendants relate to the appropriate definition of the class. First, the Defendants argue that the representative Plaintiffs' claims pursuant to section 18 of the Securities Act should not be made class-wide, as a demonstration of liability on

those claims would require individualized proof of reliance by each Plaintiff on the misrepresentations of Feet. This would violate the predominance requirement of Rule 23(b)(3), the Defendants argue, by making individual issues of reliance the overwhelming issue of the various claims. This Court will follow *Simpson v. Specialty Retail Concepts*, 149 F.R.D. 94, 102 (M.D.N.C. 1993) and *In re MDC Holdings Securities Litigation*, 754 F.Supp. 785, 792 (S.D. Cal. 1990). Because the *Simpson* court's argument is persuasive, the Court quotes it in full:

> In the remaining federal and state law claims, Simpson must prove individual reliance on behalf of himself and the class. DH & S argues that class certification should be denied as to these claims because such proof would be unwieldy and unnecessary. While individualized reliance will have to be proven, this Court agrees with those courts which have found that the common issues predominate and that considerations of judicial efficiency and economy will be furthered by permitting certification of the pendent state law claims. See e.g. *Kirschner*, 139 F.R.D. at 83 (and cases cited therein); *Keyser v. Commonwealth Nat. Fin. Corp.*, 121 F.R.D. 642 (M.D.Pa. 1988). As noted in *Kirschner*, "[i]n the event that individual issues of reliance pose difficulties as to case management at a later stage, there are mechanisms available to effectively litigate the reliance questions, without destroying the efficiency of class proceedings on other issues." 139 F.R.D. at 83 (citing *In re ORFA Sec. Litig.*, 654 F.Supp. 1449, 1462 (D.N.J. 1987) (citing cases that approve of the use of hearings, questionnaires, or other procedures to manage the reliance element)). As a result, the Court finds individual

questions of reliance do not predominate over issues common to the claims.

*Simpson*, 149 F.R.D. at 102. This Court, after the principal common practice issues are resolved, can hold mini-trials on the issue of individual reliance with respect to each shareholder. *In re MDC Holdings Securities Litigation*, 754 F.Supp. at 792. As such, this Court will not cleave this claim from the class definition on grounds that individual issues will therefore preponderate.

The Defendants next argue for the Court to shrink the class period for the same reasons it requests the Court to deny class certification. This Court is of the opinion that the periods for which liability can be ascribed to the various Defendants is one best left to the jury at trial and not made by the Court on a motion for class certification.

Finally, the Defendants argue that multiple subclasses must be certified to deal with each of the Defendants in this action and the various limited periods of their liability. For the most part, this argument lacks merit. The Feet Defendants were allegedly engaged in a common scheme and it would be redundant to have to retry much of those issues with regard to separate classes. At the same time, the putative class

members' bases for liability against the Feet Defendants and the audit Defendants are substantially varied. Combining trials against these two sets of defendants would be potentially confusing for a jury. However, the certification of two subclasses is not likely to remedy the issue; the two subclasses would be identical and could still try the issue in a common (and still more confusing) proceeding.

The appropriate course, rather, is to sever the action by the class against the Feet Defendants from their action against the audit Defendants pursuant to Federal Rule of Civil Procedure 21. The severance of issues for subsequent proceedings and trial is committed to the district court's broad discretion. *See Brunet v. United Gas Pipeline Co.*, 15 F.3d 500, 505 (5th Cir. 1994). Several factors are to be considered in determining the appropriateness of severance: the convenience of the parties, the risk of prejudice to any party, and the promotion of judicial expedience and economy. *See Rojas v. National Accident Insurance Underwroters*, 2001 WL 682231 (W.D. Tex. 2001), and *Old Colony Ventures I v. SMWNPF Holdings, Inc.*, 918 F.Supp. 343, 350 (D.Kan. 1996). All of these factors militate in favor of severing the

action against the Feet Defendants from that against the audit Defendants.

## CONCLUSION

For the foregoing reasons, the motion for class certification will be GRANTED. Further, the case will heretofore be SEVERED into one action against Harold Ruttenberg, Eric L. Tyra, Peter Berman, Cooper Evans, Patrick Lloyd, Don-Allen Ruttenberg, Michael P. Lazarus, Helen Rockey, Scott C. Wynne, Randall Haines, and Adam Gilburne and a second action against Deloitte & Touche LLP, Steven H. Barry, and Karen Baker.

IT IS SO ORDERED this 3rd day of July, 2001.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE