IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| STATE OF WISCONSIN INVESTMENT BOARD, et al., On Behalf of Themselves and All Others Similarly Situated. | ] ] ] ] | |
| Plaintiffs, | ] ] | |
| v. | ] ] | CV-99-BE-3097-S |
| HAROLD RUTTENBERG, et al., | ] ] | CLASS ACTION |
| Defendants. | ] | |

CONSOLIDATED WITH

| | | |
|---|---|---|
| GEORGE W. MASSEY, On Behalf of Himself and All Others Similarly Situated, | ] ] ] ] | |
| Plaintiff, | ] ] | |
| v. | ] ] | CV-99-BE-3129-S |
| HAROLD RUTTENBERG, et. al., | ] ] | |
| Defendants. | ] ] | |

MEMORANDUM OPINION

I. NATURE OF THE ACTION AND PRIOR PROCEEDINGS

This case is before the court as a result of the Eleventh Circuit Court of Appeals'

1

January 9, 2003 mandate[1] vacating the bar provisions contained in the March 4, 2002 final judgment entered by United States District Judge H. Dean Buttram ("Judge Buttram").[2] The Eleventh Circuit remanded the case to this court "for reconsideration and the entry of [a bar] order that is reasonable, fair, and equitable."[3] The Eleventh Circuit vacated Judge Buttram's prior bar order based on what it characterized as the inability to find "any justification for the [bar] order entered in this case."[4]

Having carefully reviewed the briefs filed in support of and in opposition to the modification of the bar order, and having heard extensive arguments from counsel, the court concludes that the bar order contained in Judge Buttram's final judgment is consistent with the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(f)(7)(A), and the controlling law of this circuit. Therefore, this court readopts the prior order entered by Judge Buttram for the reasons stated in this Memorandum Opinion.

The underlying dispute in this case arises from a massive securities fraud class action lawsuit filed in the United States District Court for the Northern District of Alabama by shareholders of Just for Feet, Inc. The class plaintiffs filed suit against Just for Feet, Inc., once one of the nation's leading athletic shoe retailers; its former officers

---

[1] *See* doc. # 482.

[2] Between the entry of final judgment and the issuance of the Eleventh Circuit's mandate, Judge Buttram resigned from the court. Upon remand, the case was reassigned to the undersigned judge.

[3] *See* doc. # 482.

[4] *Id.*

and directors ("JFF defendants")[5]; Just for Feet's independent auditor, Deloitte & Touche LLP; and two Deloitte employees[6] (hereinafter referred to collectively as the "Deloitte defendants"). In the months following the initiation of the federal securities class action litigation, the JFF defendants and the Deloitte defendants were named as co-defendants in other lawsuits filed by Just for Feet shareholders. These separate lawsuits, like the case currently before this court, were based on Just For Feet's allegedly fraudulent accounting practices and filed in Alabama state and federal courts and in Texas state court (hereinafter referred to as the "related cases").

Both groups of co-defendants eventually negotiated settlements with the plaintiff class in this case. On December 26, 2001, the JFF defendants entered into a settlement agreement with the plaintiff class and filed a proposed order of final judgment incorporating the provisions of the settlement agreement. Similarly, on January 7, 2002, the Deloitte defendants entered into a negotiated settlement agreement with the plaintiff class and filed a proposed order of final judgment adopting the settlement agreement.

Both the JFF proposed final order and the Deloitte proposed final order comported with 15 U.S.C. § 78u-4(f)(7)(A)[7] by including provisions barring contribution claims by

---

[5]Specifically, Harold Ruttenberg, Don Allen Ruttenberg, Scott Wynne, Michael P. Lazarus, Randall L. Haines, Helen Rockey, Eric Tyra, Cooper Evans, Patrick Lloyd, Peter Berman, and Adam Gilburne.

[6]Steven H. Barry and Karen Baker.

[7]*See Infra* p. 10.

3

or against a settling defendant. However, the JFF proposed final order contained a settlement bar provision that directly impacted the Deloitte defendants' ability to assert any contribution and independent claims against the JFF defendants in the related cases. The bar order proposed by the JFF defendants provided:

> *[Deloitte is] permanently and forever barred and enjoined from filing,* commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively, or in any other capacity *any claim,* counterclaim, cross-claim, third-party claim or other actions *based upon, relating to, or arising out of the Released Claims and/or the transactions and occurrences referred to in . . . Plaintiffs' Complaints, as amended (including, without limitation, any claim or action seeking indemnification and/or contribution, however denominated) against any of the Released Persons,* which such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued, or are asserted under state, federal or common law. . .

(emphasis added).[8] The final ordered proposed by the Deloitte defendants did not contain the above-referenced language and only barred claims by or against Deloitte for contribution arising from the settled case.[9]

The Deloitte defendants objected to the language contained in the JFF proposed final order for two primary reasons. First, they argued that the proposed bar order's broad

---

[8] *See* Doc. # 520, p. 3.

[9] Specifically, the Deloitte stipulation provided:

> Upon the Effective Date of the settlement, all claims for contribution arising out of the Action are thereby barred: (i) against Defendants; and (ii) by Defendants against any person or entity other than a person or entity whose liability to Class Members has been extinguished pursuant to this Settlement Stipulation or the Final Order and Judgment.

scope violated the requirements of the PSLRA because section 78u-4(f)(7)(A) of the Act only permits the extinguishment of contribution claims. Second, Deloitte argued that a broad bar order has constitutional implications because it extinguishes any independent claims and contribution claims that Deloitte may have against the JFF defendants in the related cases filed in other fora. Specifically, the Deloitte defendants contend that the broad bar order contained in the final order proposed by the JFF defendants impermissibly divested them of valuable property rights without compensation.[10]

In stark contrast, the JFF defendants argued that the broad bar order comprised an indispensable component of their settlement agreement. According to the JFF defendants, their interests in finality of all litigation related to or arising from the allegedly fraudulent corporate practices of Just For Feet mandated a bar order that precluded all claims by all parties involved in this case. The JFF defendants argued that only a global bar order would prevent the exhaustion of limited financial resources that would otherwise have to be expended in defense of claims asserted by co-defendants. In response to the these objections, Judge Buttram held a fairness hearing on February 21, 2002, and summarily overruled the Deloitte defendants' objections.

In his March 4, 2002, final judgment, Judge Buttram adopted verbatim the broad bar order proposed by the JFF defendants.[11] The Deloitte defendants successfully

---

[10] *See Id.*, p. 4.

[11] *See* doc. # 466, ¶ 11.

5

appealed to the Eleventh Circuit. In its written opinion remanding the case, the Eleventh Circuit noted that Deloitte "ordinarily" would be compensated, in the form of a setoff or settlement credit, for the loss of claims against the JFF Defendants, but observed that "although the [JFF] Order is exceedingly broad, there are no findings of fact or expressed rationale for barring" such claims.[12] Consequently, the Eleventh Circuit remanded the case to this court for the reconsideration and entry of a reasonable, fair, and equitable bar order.

## II. THE PARTIES' CONTENTIONS ON REMAND

Shortly after the remand of this case, the court held a status conference to evaluate the possibility of settlement and to gain a clear understanding of the parties' respective positions. Of particular interest to the court was the status of the factually-similar cases pending in other jurisdictions against the Deloitte defendants, specifically, *Charles R. Goldstein, et al. v. Harold Ruttenberg, et al.*, filed in the Circuit Court of Jefferson County, Alabama ("Trustee Case") and *Tara Capital Partners, I, L.P., et al. v. Deloitte & Touche LLP, et al.*, filed in the District Court of Dallas County, Texas ("*Tara*").[13] The allegations in both cases arise out of the same transactions and occurrences alleged in this case. Specifically, in the Trustee case, the bankruptcy trustee seeks damages for Just For

---

[12] *See* doc. # 482.

[13] The JFF defendants have settled with the plaintiff class in the *Tara* case. Furthermore, both JFF and Deloitte are co-defendants in another case filed in this district, *AAL High Yield Bond Fund v. Harold Ruttenberg, et al.*, 00-C-1404-S, that is currently on appeal to the Eleventh Circuit Court of Appeals raising a similar challenge to the bar order.

Feet, Inc. based on alleged corporate fraud. Similarly, the issues raised in the *Tara* case are identical to the ones raised in this case because the plaintiffs in that case opted out of the class certified by Judge Buttram. Therefore, any claims that the Deloitte defendants might have against the JFF defendants in the above-referenced cases arise out of the JFF securities fraud litigation and would be extinguished by Judge Buttram's bar order.

      When the court realized that the parties would not compromise their respective positions, it scheduled an August 26, 2003, hearing on the bar order issue. At the hearing, the parties refined the arguments presented at the February 21, 2002, fairness hearing before Judge Buttram. The Deloitte defendants reasserted their position that the PSLRA prohibits the entry of a bar order of greater breadth than the statutory model mandated by 15 U.S.C. § 78u-4(f)(7)(A), but conceded that they could not provide the court with either controlling or persuasive authority supporting that position. The majority of Deloitte's argument focused on its contention that this court cannot extinguish viable contribution claims or other independent claims that the Deloitte defendants might have against the JFF defendants in related cases filed in other jurisdictions.

      Although conceding that the bar order at issue in this case is at least as broad as the one approved by the Eleventh Circuit in *In re U.S. Oil & Gas Litigation*, 967 F.2d 489 (11th Cir. 1992), the Deloitte defendants attempted to distinguish that case. Deloitte contends that the Eleventh Circuit in *In Re Oil & Gas Litigation* was not presented with a situation that the court now faces in this case: a defendant objecting to the extinguishment

of contribution or independent claims in factually-related cases filed by litigants who are not parties in the settled case.

Having attempted to undercut the precedential value of *In re Oil & Gas Litigation*, the Deloitte defendants next argue that the broad bar order entered by Judge Buttram impermissibly divested them of their property interests in unasserted causes of action. Specifically, the order did not provide the Deloitte defendants with a proportionate judgment credit in compensation for the extinguishment of potential claims against the JFF defendants in related state court actions. The Deloitte defendants argue that the Eleventh Circuit implicitly recognized the validity of their argument by recognizing that "ordinarily, there would be a 'setoff,' or settlement credit, to compensate Deloitte for the bar to its contribution claims against the JFF [defendants] that might arise out of other lawsuits brought by other plaintiffs."[14]

Not surprisingly, the JFF defendants advocate the applicability of *In re Oil & Gas Litigation*. Although acknowledging that the co-defendant objecting to the broad bar order in *In re Oil & Gas Litigation* did not have a contribution or independent claim in a related case that was extinguished by the court's broad bar order, the JFF defendants nevertheless contend that the rationale and holding of *In re Oil & Gas Litigation* is broad enough to support the bar order issued in this case. According to the JFF defendants, the Deloitte defendants have already been compensated for any hypothetical contribution and

---

[14]*See* doc. # 482, p. 2.

independent claims that have yet to be asserted in cases pending for more than three years. Specifically, the reciprocal nature of the settlement agreements in this case that simultaneously extinguished Deloitte defendants' hypothetical contribution and independent claims also protected the Deloitte defendants from similar claims by the JFF defendants. Lastly, the JFF defendants argue that the finality achieved by the global settlement is sufficient compensation for the extinguishment of any claims in the related cases.

### III. DISCUSSION

To determine whether a bar order is fair and equitable, the court should consider the settlement as a whole. *See Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977).[15] This court suffers under a disadvantage because, unlike Judge Buttram, it has no personal knowledge of the dynamics of the discussions and negotiations that resulted in the settlement agreement between the plaintiff class and the JFF defendants and the settlement agreement between the plaintiff class and the Deloitte defendants.

However, the separate stipulations, orders entered, and the transcript of Judge Buttram's February 21, 2002 hearing reflect: (1) a desire for a resolution of as much litigation as possible, particularly, the JFF defendants' settlement with the class, which was conditioned upon being able to settle related state court actions; (2) that both sets of

---

[15]In *Bonner v. City of Pritchard, Alabama*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

defendants were aware of efforts to settle their respective claims and were considered by each other in the negotiations with the class plaintiffs; and (3) that both sets of stipulations and orders reflect no offset or credit for the other settlement. Based on these considerations and the ones described more explicitly below, the court finds that the broad bar order entered by Judge Buttram is fair, equitable, and should be adopted by this court.

### A. The PSLRA does not Preclude a Bar Order Broader in Scope than the Statutory Model.

The remand of this case presents an issue of first impression in this circuit: namely, whether the enactment of 15 U.S.C. § 78u-4(f)(7)(A) of the PSLRA precludes a court from entering a bar order that extinguishes claims other than those for contribution in the settled case. In pertinent part, § 78u-4(f)(7)(A) requires that a court

> enter a bar order constituting the final discharge of all obligations to the plaintiff of the settling covered person arising out of the action . . . . [and] . . . bar all *future claims for contribution arising out of the action - (i) by any person against the settling covered person*; and (ii) by the settling covered person, other than a person whose liability has been extinguished by the settlement of the settling covered person.

15 U.S.C. § 78u-4(f)(7)(A) (emphasis added). Presumably, as "*quid pro quo*" for the extinguishment of otherwise valid contribution claims, the PSLRA provides a proportionate judgment credit to a non-settling defendant against whom a jury verdict is rendered by "an amount that corresponds to the percentage of responsibility of [the non-

settling defendant] or . . . the amount paid to the plaintiff by [the settling co-defendant]." 15 U.S.C. § 78u-4(f)(7)(B).

While clarifying prior case law regarding whether a settlement bar in a securities fraud class action can equitably extinguish contribution claims among co-defendants, the PSLRA provides little guidance about whether courts approving settlement agreements in securities fraud class actions can enter a settlement bar order extinguishing claims other than ones for contribution in the settled case.

Fortunately, the established law of this circuit provides the court with some guidance on this issue. When interpreting the PSLRA and other federal securities statutes, the threshold analytical inquiry for the court is the statutory language. *United States v. DBB, Inc.,* 180 F.3d 1277, 1281 (11th Cir.1999). The language of 15 U.S.C. § 78u-4(f)(7)(A) does not address the propriety of a bar order precluding non-contribution claims. Furthermore, the statute's legislative history fails to indicate Congress' rationale for including a contribution bar, nor does it affirmatively state that the contribution bar contained in § 78u-4(f)(7)(A) divests a court of its discretionary authority to enter a bar order broader in scope than the statutory model. *Cf., In Re Rite Aid Corp. Securities Litig.,* 146 F. Supp. 2d 706, 727, n. 29 (E.D. Pa. 2001) (observing that section 78u-4(f)(7)(A) does not prohibit a court from approving a bar order that extinguishes claims other than ones for contribution); [16] *see also, In re Cendent Corp. Securities Litig.,* 166 F.

---

[16] *In Re Rite Aid Corp. Securities Litig.,* 146 F. Supp. 2d 706, 726 (E.D. Pa. 2001), the court evaluated a bar order that extinguished "any other claim, however styled, whether for

Supp. 2d 1, 6 n. 1 (indicating that the "court's own review of testimony at various congressional hearings fails to uncover any discussion which would shed light on the specific purposes behind the contribution bar.").

Consequently, the court rejects the Deloitte defendants' argument that the PSLRA's legislative history "makes it evident that Congress consciously decided not to expand the scope of the bar order beyond contribution claims arising out of the action."[17] Prior to Congressional enactment of the PSLRA mandated bar order, courts fashioned broad bar orders. *See e.g., In re U.S. Oil & Gas Litig.*, 967 F.2d at 496. Nothing in section 78u-4(f)(7)(A) seeks to limit a court's authority in crafting bar orders as long as the court includes, at a minimum, the language contained in the above-referenced section. Consequently, in the absence of any statutory language or legislative history that would indicate an intent to prohibit the entry of a bar order covering anything other than contribution claims in the settled case, the court concludes that section 78u-4(f)(7)(A) of the PSLRA does not divest the court of the power to fashion bar orders extinguishing claims other than those for contribution in the settled case.

---

indemnification, contribution or otherwise, and whether arising under state, federal or common law . . . arising out of or relating to the settled claims." *In Re Rite Aid*, 146 F. Supp. 2d at 721. In holding that § 78u-4(f)(7)(A) did not preclude the entry of a broader bar order that extinguished indemnification claims and claims for defamation and claims that do not sound in contribution, the court pointed to the following: (1) pre-PSLRA decisional law that permitted courts to extinguish non-contribution claims in bar orders; and (2) the language of § 78u-4(f)(7)(A), which does not by its terms *require* that only contribution claims be extinguished in bar orders. *In Re Rite Aid*, 146 F. Supp. 2d at 722, 726-27 n. 29.

[17]*See* doc. # 520, p. 12.

### B. The Proper Limitation on the Scope of Settlement Bar Orders is Dictated by the Rationale and Holding of *In re Oil & Gas Litigation*.

The PSLRA also provides the court with little guidance about the second question at issue in this case: namely, whether a settlement bar order can extinguish contribution or so-called "independent" claims that the Deloitte defendants may have against the JFF defendants in the related cases. *See generally*, David Kaplan, *The Scope of Bar Orders in Federal Securities Fraud Settlements*, 52 Duke L.J. 211, 241 (2002) (outlining the contours of the debate and the varying approaches utilized by courts in addressing the problem). After a careful review of the briefs filed in support of and in opposition to the modification of the bar order at issue in this case, the court concludes that the proper limitation on the scope of the settlement bar order at issue in this case is dictated by the rationale and holding of *In re Oil & Gas Litigation*.

The case law of this circuit favors voluntary settlement in the resolution of class-action lawsuits and establishes that a court must ensure that the proposed settlement in a class-action lawsuit is fair, equitable, and reasonable. *Hinton*, 559 F.2d at 1330. The Eleventh Circuit first established guidelines for bar orders in securities class action settlements in *In re Oil & Gas Litigation*. 967 F.2d at 494. According to the Eleventh Circuit, "[b]ar orders play an integral role in facilitating settlement. Defendants buy little peace through settlement unless they are assured that they will be protected against co-defendant's efforts to shift their losses through cross-claims for indemnity, contribution, and *other causes related to the underlying litigation*." 967 F.2d at 494 (emphasis added).

13

The defendant insurance company in *In re Oil & Gas Litigation* entered into a separate settlement agreement with the plaintiff class but objected to the entry of a global bar order that would ultimately result in the extinguishment of its pending cross-claim for fraud and negligence against another co-defendant. 967 F.2d at 492. The bar order in that case extinguished:

> *[a]ll claims, however denominated, regardless of the allegations, fact, law, theories, or principles on which they are based* . . . including claims for contribution or indemnity . . . by an individual corporation, partnership . . . *but not limited to any party to this litigation* . . . *which arise out of or are in any way related to the class action or the receiver's action or the subject matter of those actions,* or arise out of or are in any way related to the Companies . . ..

*In re Oil & Gas Litig.,* 967 F.2d at 493 n. 2 (emphasis added).

In evaluating the breadth of that particular bar order, arguably broader than the one at issue in this case, the Eleventh Circuit held that the propriety of a settlement bar order

> should turn on the *interrelatedness of the claims that it precludes*, not upon the labels which parties attach to those claims. If the cross-claims that the district court seeks to extinguish through the entry of a bar order *arise out of the same facts as those underlying the litigation, then the district court may exercise its discretion to bar such claims* in reaching a fair and equitable settlement.

*In Re Oil & Gas Litig.*, 967 F.2d at 496 (emphasis added). The Eleventh Circuit's willingness to affirm such a broad bar order was based in part on its recognition that settlement in complex securities class actions would be unlikely in the absence of such a broad bar order. *See In Re Oil & Gas Litig.,* 967 F.2d at 494. The court also noted in

14

*dicta* that it questioned "*whether truly independent claims that a settlement bar order cannot extinguish will ever remain in a class action lawsuit.*" *In Re Oil & Gas Litig.*, 967 F.2d at 496 n. 5 (emphasis added).[18]

Although decided prior to the enactment of the PSLRA, the test outlined in *In Re Oil & Gas Litigation* remains the standard for evaluating the propriety of settlement bar orders in this circuit precisely because the PSLRA does not squarely address the issue, and nothing in the legislative history reflects Congressional intention to prohibit bar orders that are broader in scope. In reaching this conclusion, the court rejects the Deloitte defendants' attempts to distinguish this case from *In re Oil & Gas Litigation*. The objecting defendant in *In re Oil & Gas Litigation* presumably did not have claims against a co-defendant in related lawsuits filed by other plaintiffs in other jurisdictions. However, the expansive bar order in *In re Oil & Gas Litigation* contemplated the extinguishment of claims that were not confined to the "universe" of that case. For example, the settlement bar order extinguished claims that could conceivably be asserted by non-parties to the litigation. *In re Oil & Gas Litig.*, 967 F.2d at 489 n.2. Additionally, the bar order even provided for the extinguishment of claims arising out of or relating to the receiver's separate action. *Id.*

---

[18] In *Matter of Munford, Inc.*, decided approximately four years after *In re Oil & Gas Litigation*, the Eleventh Circuit applied the interrelatedness test in evaluating the appropriate scope of a bar order entered by the bankruptcy court that barred a non-settling defendant's un-asserted state law contribution and indemnity claims. 97 F.3d 449 (11th Cir. 1996).

Given the court's conclusion about the continued viability of *In re Oil & Gas Litigation*, the relevant inquiry in this case is whether the claims extinguished by the bar order arise out of the same facts as those in the underlying JFF securities litigation. In their brief, the Deloitte defendants acknowledge that "[a]ll of the complaints in the various Just For Feet cases rest on allegations of accounting fraud substantially the same as those found in these cases, and thus[,] are based upon, relate to, or arise out of 'the transactions and occurrences referred to' in the complaints [in this case]."[19] Based on this acknowledgment, the court finds that any claims that the Deloitte defendants may have against the JFF defendants in the related cases, despite their appellation, clearly satisfy the "interrelatedness test" outlined by the court in *In Re Oil & Gas Litigation* and consequently, can permissibly be extinguished by the bar order contained in Judge Buttram's March 4, 2002 final judgment.

### C. The Bar Order at Issue in this Case does not deprive Deloitte of federally protected liberty or property interests.

Having established that the law of this circuit permits a broad bar order extinguishing any claims arising out of the same facts as the settled action, the court next addresses whether the bar order contained in Judge Buttram's March 4, 2002 final judgment impermissibly divested the Deloitte defendants of valuable property rights without fair compensation in the form of a corresponding settlement credit or setoff. The

---

[19] Doc. # 520, p. 6. Given this conclusion, the court does not address the issue of whether Alabama or Texas law would preclude claims for contribution among joint tortfeasors.

Deloitte defendants essentially argue that they were non-parties to the settlement agreement negotiated by the JFF defendants that ultimately divested them of a valuable property interest in concrete, yet un-asserted contribution and non-contribution claims in the related cases.[20]

The parameters of the Deloitte defendants' constitutional arguments are unclear. Specifically, the court is unsure of whether the defendants' argument about the unconstitutionality of the bar order rests in the principles of substantive or procedural due process. In an attempt to clarify this ambiguity, defense counsel represented to the court at the August 26, 2003, hearing that Deloitte defendants' argument was more analogous to a claim for a violation of substantive due process rights.[21] The court flatly rejects this argument. The substantive component of the due process clause protects those rights that are "fundamental, that is, rights that are implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325 (1937); *McKinney v. Pate,* 20 F.3d 1550, 1556 (11th Cir.1994) (en banc). Traditionally, the types of interests recognized under substantive due process include rights of privacy, family and procreation – those rights that are so central to individual freedom which "neither liberty nor justice would exist if [they] were sacrificed." *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937). Based on the record

---

[20]Although the Deloitte defendants strenuously assert the existence of these independent claims, the precise scope of these yet to be asserted claims has not been articulated to the court despite repeated requests.

[21]August 26, 2003 Hearing Transcript, p. 22.

before it, the court does not conclude that the extinguishment of un-asserted contribution and independent claims arising out of the related cases rises to the level of substantive due process violation.

Even assuming that purely hypothetical claims that the Deloitte defendants may have against the JFF defendants in the related cases are property interests protected by due process, the court concludes that the Deloitte defendants have been given all the process that is due, i.e., a fairness hearing and a reciprocal bar order protecting them from claims against the JFF defendants arising from the subject matter of the JFF securities fraud investigation. *See Greenbriar Village, L.L.C. v. City of Mountain Brook*, 345 F.3d 1258, 1264 (11th Cir. 2003) (examining the following elements when analyzing the elements of a due process claim: "(1) whether there is enough of a property interest at stake to be deemed 'protectable'; (2) the amount of process that should be due for that protectable right; and (3) the process actually provided, be it before or after the deprivation." and concluding that uncertainty as to the duration of rights rendered them unprotectible as a matter of procedural due process).

Upon due consideration and for the reasons stated in the Memorandum Opinion, the court finds that (1) nothing in either the plain language or the legislative history of the PSLRA precludes a bar order that is broader in scope than the statutory model contained in 15 U.S.C. § 78u-4(f)(7)(A) and (2) the proper limitation on the scope of settlement bard orders is dictated by the rationale and holding of *In re Oil & Gas Litigation*.

Consequently, the court concludes that the bar order entered by Judge Buttram is fair, equitable, and consistent with prevailing Eleventh Circuit law. Accordingly, the court re-adopts the bar order contained in the March 4, 2002 final judgment entered by United States District Judge H. Dean Buttram.

A separate, final order will be entered.

DONE and ORDERED this 29th day of January, 2004.

KARON O. BOWDRE
UNITED STATES DISTRICT JUDGE